IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

HOLOGIC, INC. and CYTYC )
SURGICAL PRODUCTS, LLC, )
                                 )
     Plaintiffs, )
                                 )
     v. ) Civ. No. 15-1031-SLR
                                 )
MINERVA SURGICAL, INC., )
                                 )
     Defendant. )

## MEMORANDUM ORDER

At Wilmington this 29th day of February, 2016, having reviewed the motions filed by defendant Minerva Surgical, Inc. ("Minerva") to transfer venue and to strike plaintiffs' preliminary injunction motion for lack of standing , and the papers filed in connection thereto;

IT IS ORDERED that Minerva's motion to transfer (D.I. 35) is denied, for the reasons that follow:

1. Minerva moves to transfer this action to the Northern District of California, where it maintains its headquarters and sole place of business. The analytical framework for motions to transfer pursuant to 28 U.S.C. § 1404(a) are well known and will not be repeated here. *See, e.g., In re Link_A_Media Devices Corp.,* 662 F.3d 1221 (Fed. Cir. 2011); *Jumara v. State Farm Ins. Co.,* 55 F.3d 873 (3d Cir. 1995); *Helicos Biosciences Corp v. Illumina, Inc.,* 858 F. Supp. 2d 367 (D. Del. 2012). I have gleaned the following from the above case law: A plaintiff, as the injured party, has the privilege

of initiating its litigation in the forum it chooses. A defendant's place of incorporation is always an appropriate forum in which to sue that defendant. The purpose of § 1404(a) is not to usurp plaintiff's choice, but to give courts the discretion to transfer if the interests of justice so dictate. The Third Circuit in *Jumara* gave the courts some factors to balance in making their determination, keeping the above tenets in mind. The *Jumara* factors should be viewed through a contemporary lens. In this regard, I have declined to transfer based on the location of potential witnesses and of books and records, as discovery is a local event,[1] and trial is a limited event.[2] With respect to the factor related to "administrative difficulty from court congestion," the case management orders always start with the schedules proposed by the litigators. It has been my experience that most litigators (especially those representing defendants) are in no hurry to resolve the dispute. If there is a need to expedite proceedings, that need is accommodated. In sum, this factor generally is neutral.

2. Minerva argues that, because it is a start-up company with only one product -

---

[1]Depositions generally are taken where the deponents reside, and books and records generally are kept in a digital format and easily transferable. To the extent that Minerva's books and records are kept in "physical form" (hard to believe, but suggested by Minerva), it would be the opposing party's burden to travel for an inspection and/or to pay for copies.

[2]According to national statistics, less than 13.9 % of patent infringement cases resolve on the merits. Howard, Brian, *The Truth About Patent Damage Awards*, Law360 (Oct. 16, 2014) (patent cases filed between 2000 and 2013); Morgan, Paul, *Microsoft v. i4i - Is the Sky Really Falling?*, PatentlyO (Jan. 9, 2011) ("[M]ore than 97% of patent suits are settled before trial with no judicial validity test."); Denlow, Morton, Hon. Ret., *Magistrate Judges' Important Role in Settling Cases*, The Federal Lawyer, 101 (May/June 2014) ("In 2012, less than 2 percent of federal civil cases went to trial.").

the accused product - and no sales yet in Delaware,[3] the balance of hardships weigh in favor of transfer.  With respect to the lack of ties to Delaware but for incorporation, even it that were the case,[4] the place of incorporation reflects a company's recognition that Delaware is an appropriate jurisdiction for resolution of commercial disputes through litigation.  *See, e.g., Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011).  Having accepted the benefits of incorporation under the laws of the State of Delaware, "a company should not be successful in arguing that litigation" in Delaware is "inconvenient," "absent some showing of a unique or unexpected burden." *ADE Corp. v. KLA-Tencor Corp.,* 138 F. Supp. 2d 565, 573 (D. Del. 2001).  In this case, Minerva asserts that it does not have the financial resources to litigate in Delaware; in contrast, plaintiff Hologic, Inc. ("Hologic"), which is headquartered in Massachusetts, not only has the resources to litigate in California, but has done so in the past.[5]

3.  I recognize that litigating in Delaware may be a more expensive exercise for Minerva than litigating in California.[6]  Under the circumstances at bar, however - a first-

---

[3]Although there is record evidence that the accused product was demonstrated at one Delaware hospital by a representative of Minerva.  (D.I. 38 ¶ 8)

[4]Minerva suggests that it "presently has no intention of selling the Accused Devices in Delaware," discounting its sales effort to the Delaware hospital.  (D.I. 38 at 2-3)  I am not persuaded that a start-up company, especially one complaining about its lack of financial resources, is not interested in making sales, and decline to give such a suggestion any substantial weight.

[5]According to Hologic, it was a defendant in two of the three lawsuits, and brought the third lawsuit because it was related to one of the other two cases; to wit, California is not a venue of choice for Hologic.  (D.I. 49 at 13)

[6]As noted by Minerva, the increase in costs is associated with retaining Delaware counsel and with travel.

3

filed case between Delaware corporations that does not implicate the state laws of another jurisdiction - I decline to elevate the convenience of one party over the other. "The burden of establishing the need for transfer . . . rests with the movant." *Jumara*, 55 F.3d at 879. The record at bar does not reflect (and I am not persuaded) that litigating in Delaware imposes a unique or unexpected burden on Minerva, such that transfer is warranted.

IT IS FURTHER ORDERED that Minerva's motion to strike (D.I. 52) is denied, for the reasons that follow:

4. Minerva has filed a motion to strike Hologic's pending motion for a preliminary injunction based on Hologic's alleged lack of standing. As presented by Minerva, Hologic lacks standing because, at the time of filing the complaint, the patents in dispute[7] were owned by plaintiff Cytyc Surgical Products LLC ("Cytyc"), a Massachusetts company and wholly owned subsidiary of Hologic. According to Minerva, because Cytyc is a patent holding company and non-operating entity, Cytyc "alone could not have prevailed (and likely would never even have brought) a motion for preliminary relief on its own." (D.I. 52 at 3)

5. "The general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the **legal title** to the patent **during the time of infringement**." *Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) (emphasis in original). In contrast, "[a]n owner of the equitable title may seek redress against an infringer in a court of equity" where he

---

[7]U.S. Patent Nos. 9,095,348 and 6,872,183.

4

may only seek equitable relief.  *Id.* at 1580 (citation omitted).  "The fact that a corporate

parent's subsidiary owns a patent is not enough to establish that the parent has a **legal**

ownership interest in the subsidiary's patent."  *Digitech Image Techs., LLC v. Newegg*

*Inc.*, 2013 WL 1871513, at *4 ((C.D. Cal. May 3, 2013) (emphasis in original).  *Accord,*

*Abraxis Bioscience, Inc. v. Navinta LLC,* 625 F.3d 1359, 1366 (Fed. Cir. 2010).

Moreover, "the mere fact that a corporation's subsidiary owns a patent is insufficient to

establish that the corporation has **equitable** title to the patent."[8]  *Digitech*, 2013 WL

1871513, at *4 (emphasis added).  *Accord, Top Victory Electronics v. Hitachi Ltd.,* 2010

WL 4722482, at *4 (N.D. Cal. Nov. 15, 2010) (the fact that the companies are "closely

intertwined by virtue of their parent/subsidiary relationship" is insufficient to establish

standing); *Merial Ltd. v. Intervet, Inc.*, 430 F. Supp. 2d 1357, 1361-63 (N.D. Ga. 2006)

("standing under the Patent Act cannot be based on the mere fact that [the subsidiary]

is a wholly-owned subsidiary of [the parent company]"); *Beam Laser Sys., Inc. v. Cox*

*Communications, Inc.*, 117  F. Supp. 2d 515, 521 (E.D. Va. 2000) (ownership of

corporate stock does not create equitable title in that corporation's property); and *Site*

*Microsurgical Sys., Inc. v. Cooper Cos.,* 797 F. Supp. 2d 333, 338 (D. Del. 1992)

(finding mere fact of a parent-subsidiary relationship did not confer standing on parent).

*See also, Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.,* 620 F.3d 1305,

1317-18 (Fed. Cir. 2010) (standing not established based on a corporate

"understanding" that one subsidiary owned and enforced the patent and a second

---

[8]"Equitable title may be defined as 'the beneficial interest of one person whom
equity regards as the real owner, although the legal title is vested in another.'"  *Digitech*,
2013 WL 1871513, at *3 (citation omitted).

subsidiary was the only entity that made and sold products practicing the patent).

6. As is evident from the above recitation, the issue of standing is rooted in the facts of each case. While the "mere fact" of stock ownership or of a corporate relationship does not alone establish standing, the record at bar is sufficient to demonstrate "that boundaries between the corporations [at bar] have been breached." *Top Victory*, 2010 WL 4722482, at *3. More specifically, the record reflects that, at the time the original complaint and the motion for preliminary relief were filed, Cytyc owned the patents-in-suit and Hologic owned and "exercised . . . complete control over Cytyc," including control over all of Cytyc's business decisions and Cytyc's patent enforcement, assignment, and licensing policies. (D.I. 61 ¶¶ 5, 6) According to Hologic, "[b]ecause of the structure of this corporate relationship and Hologic's complete control over Cytyc's patent licensing and enforcement policies, Hologic has had control over the Patents-in-Suit, and has enjoyed exclusive rights thereunder." (*Id.*) Under these circumstances, Hologic has established its equitable standing to pursue injunctive relief. *See also Cognex Corp. v. Microscan Sys., Inc.*, 2014 WL 2989975, at *5 (S.D.N.Y. June 30, 2014); *Atmel Corp. v. Authentic, Inc.,* 490 F. Supp. 2d 1052, 1055 (N.D. Cal. 2007); *Pipe Liners, Inc. v. American Pipe & Plastics, Inc.*, 893 F. Supp. 704, 706 (S.D. Tex. 1995).

IT IS FURTHER ORDERED that the parties shall bear their own costs for the above described motion practice, as I considered neither motion frivolous.

United States District Judge

6