**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HOLOGIC, INC., AND CYTYC SURGICAL PRODUCTS, LLC, | |
| Plaintiffs, | |
| v. | C.A. No. 15-1031-JFB-SRF |
| MINERVA SURGICAL, INC., | REDACTED - PUBLIC VERSION |
| Defendant. | |

## JOINT [PROPOSED] FINAL PRETRIAL ORDER

DATED: June 7, 2018

Redacted Version: July 26, 2018

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Of Counsel:*

Matthew M. Wolf
Marc A. Cohn
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
matthew.wolf@arnoldporter.com
marc.cohn@arnoldporter.com

Ryan J. Casamiquela
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
ryan.casamiquela@arnoldporter.com

David A. Caine
Philip W. Marsh
Assad H. Rajani
**ARNOLD & PORTER KAYE SCHOLER LLP**
Five Palo Alto Square
3000 El Camino Real, Suite 500
Palo Alto, CA 94306
Telephone: (650) 319-4500
david.caine@arnoldporter.com
philip.marsh@arnoldporter.com
assad.rajani@arnoldporter.com

*Attorneys for Plaintiffs, Hologic, Inc.*
 *and Cytyc Surgical Products, LLC*

**GREENBERG TRAURIG, LLP**
Benjamin J. Schladweiler (#4601)
1007 North Orange Street, Suite 1200
Wilmington, DE  19801
(302) 661-7000
schladweilerb@gtlaw.com

*Of Counsel:*

Vera M. Elson
Dale R. Bish
Christopher D. Mays
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
650 Page Mill Road
Palo Alto, CA  94304
(650) 493-9300

Edward G. Poplawski
Olivia M. Kim
Erik Carlson
Neil N. Desai
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
633 West Fifth Street, Suite 1550
Los Angeles, CA  90071
(323) 210-2900

*Attorneys for Defendant,*
*Minerva Surgical, Inc.*

## TABLE OF CONTENTS

**Page**

I.     NATURE OF THE ACTION AND PLEADINGS ............................................ 6

     A.     The Parties ............................................................................................ 6

     B.     Nature of the Actions ........................................................................... 7

     C.     Claim Construction ............................................................................ 12

     D.     Asserted Claims of the Patents-in-Suit ............................................. 13

     E.     Pending Motions ................................................................................ 13

     F.     Other Relevant Motions and Orders .................................................. 14

II.     JURISDICTION .............................................................................................. 14

III.     FACTS ............................................................................................................ 15

     A.     Uncontested Facts .............................................................................. 15

     B.     Contested Facts .................................................................................. 16

IV.     ISSUES OF LAW ........................................................................................... 16

V.     BIFURCATION OF NON-JURY ISSUES ..................................................... 16

VI.     WITNESSES ................................................................................................... 17

     A.     Witness Lists ...................................................................................... 17

     B.     Testimony by Deposition ................................................................... 19

VII.     EXHIBITS ...................................................................................................... 22

     A.     Trial Exhibits ..................................................................................... 22

     B.     Demonstrative Exhibits ...................................................................... 24

     C.     Exchange of and Objections to Trial Exhibits and Demonstratives .... 24

         1.     Trial Exhibits for Direct Examination ..................................... 24

         2.     Demonstratives for Direct Examination .................................. 25

         3.     Trial Exhibits and Demonstratives for Opening and Closing Statements ............................................................................... 25

VIII.     AMENDMENT OF THE PLEADINGS .......................................................... 26

IX.     OBJECTIONS TO EXPERT TESTIMONY .................................................................. 26

X.      DISCOVERY ................................................................................................................. 26

XI.     MOTIONS *IN LIMINE* ................................................................................................ 26

XII.    NUMBER OF JURORS ................................................................................................. 27

XIII.   LENGTH OF TRIAL ...................................................................................................... 27

XIV.    BRIEF STATEMENT OF INTENDED PROOFS .......................................................... 28

XV.     ADDITIONAL MATTERS ............................................................................................ 28

        A.      Order of Presentation of Evidence ....................................................................... 28

        B.      Voir Dire ............................................................................................................... 28

        C.      Jury Instructions and Verdict Forms .................................................................... 29

        D.      Sequestration of Witnesses .................................................................................. 29

        E.      Jury Notes ............................................................................................................. 29

        F.      Handling of Confidential Information at Trial ...................................................... 30

        G.      Set-Up of Electronic Computer Devices .............................................................. 30

        H.      Federal Judicial Center Introduction to Patent System Video ............................. 30

XVI.    SETTLEMENT ............................................................................................................... 30

On Thursday, June 14, 2018, counsel for Hologic, Inc. and Cytyc Surgical Products, LLC (collectively "Plaintiffs" or "Hologic") and counsel for Minerva Surgical, Inc. (collectively "Defendant" or "Minerva") will participate in a Pretrial Conference before this Court pursuant to Rule 16 of the Federal Rules of Civil Procedure, D. Del. L.R. 16.3, and the Scheduling Order filed on September 11, 2017 (D.I. 265). Pursuant to D. Del. LR 16.3(c), the parties hereby submit for the Court's approval this Joint Pretrial Order ("Pretrial Order") governing trial of the actions, which is currently scheduled to commence on Monday, July 16, 2018, at 9:30 a.m.

**Hologic's Counsel:**

> Karen L. Pascale (#2903)
> Pilar G. Kraman (#5199)
> **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
> Rodney Square
> 1000 North King Street
> Wilmington, DE  19801
> Telephone: (302) 571-6600
> kpascale@ycst.com
> pkraman@ycst.com

> Matthew M. Wolf
> Marc A. Cohn
> **ARNOLD & PORTER KAYE SCHOLER LLP**
> 601 Massachusetts Ave., NW
> Washington, DC 20001-3743
> Telephone: (202) 942-5000
> matthew.wolf@arnoldporter.com
> marc.cohn@arnoldporter.com

> Ryan J. Casamiquela
> **ARNOLD & PORTER KAYE SCHOLER LLP**
> Three Embarcadero Center
> San Francisco, CA 94111-4024
> Telephone: (415) 471-3100
> ryan.casamiquela@arnoldporter.com

> David A. Caine
> Philip W. Marsh
> Assad H. Rajani
> **ARNOLD & PORTER KAYE SCHOLER LLP**
> Five Palo Alto Square
> 3000 El Camino Real, Suite 500

Palo Alto, CA 94306
Telephone: (650) 319-4500
david.caine@arnoldporter.com
philip.marsh@arnoldporter.com
assad.rajani@arnoldporter.com

**Minerva's Counsel:**

Benjamin J. Schladweiler (#4601)
**GREENBERG TRAURIG, LLP**
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000
schladweilerb@gtlaw.com

Vera M. Elson
Dale R. Bish
Christopher D. Mays
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300
velson@wsgr.com
dbish@wsgr.com
cmays@wsgr.com

Edward G. Poplawski
Olivia M. Kim
Erik Carlson
Neil N. Desai
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900
epoplawski@wsgr.com
okim@wsgr.com
ecarlson@wsgr.com
ndesai@wsgr.com

## I.   NATURE OF THE ACTION AND PLEADINGS

### A.   The Parties

1.     Plaintiff Hologic is a corporation organized and existing under the laws of the

State of Delaware with a principal place of business at 250 Campus Drive, Marlborough,

Massachusetts, 01752.

6

2.　　　Plaintiff Cytyc is a limited liability company organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 250 Campus Drive, Marlborough, Massachusetts, 01752.

3.　　　Minerva is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 101 Saginaw Drive, Redwood City, CA, 94063.

**B.　　　Nature of the Actions**

4.　　　On November 6, 2015, Hologic initiated suit against Minerva.  (D.I. 1.)  On January 25, 2016, Hologic filed an Amended Complaint.  (D.I. 59.)  On February 5, 2016, Hologic filed its Second Amended Complaint.  (D.I. 70.)  In this action, Hologic alleges that Minerva infringes U.S. Patent Nos. 6,872,183 ("the '183 Patent") and 9,095,348 ("the '348 Patent") (collectively "the Patents-in-Suit").[1]  The '183 Patent issued on March 29, 2005 and expires on November 10, 2020.  The '348 Patent issued on August 4, 2015 and expires on November 19, 2018.

5.　　　Hologic alleges that use of the Minerva Endometrial Ablation System ("Minerva EAS") consistent with its instructions for use practices each and every step of the method claims of the '183 Patent and that Minerva directly infringes these claims and induces and contributes to the infringement of its customers.  Hologic alleges that Minerva infringes the apparatus claims of the '348 Patent by making, selling and/or offering to sell the Minerva EAS in the United States.  Hologic contends that Minerva's infringement of the Patents-in-Suit has been and continues to be willful.  In this action, Hologic also alleges Minerva has engaged in (i) unfair competition

---

[1] Hologic had also asserted U.S. Patent No. 8,998,898 ("the '898 patent") and U.S. Patent No. 9,247,989 ("the '989 patent") (D.I. 1, 59, and 70), but later dropped these patents in its Election of Asserted Patents and Claims.  **Hologic's position**: Hologic objects to any reference by Minerva at trial of non-elected, dropped patents or claims.  Such elections occurred due to judicial efficacy concerns ordered by the Court.  **Minerva's position**: Minerva should be able to discuss non-elected, dropped patents or claims in relation to its invalidity defenses.  Further, Hologic refused to dismiss the dropped patents or claims with prejudice.

under 15 U.S.C. § 1125; (ii) deceptive trade practices under 6 Del. C. § 2532; (iii) unfair

competition under Delaware common law; and (iv) tortuously interfered with Hologic's business

relationships under Delaware common law.

6.      Based on its allegations of patent infringement, Hologic seeks total damages of

$17,824,534 on infringing sales of the Minerva EAS from August 2015 through March 31, 2018,

comprising $16,234,761 in lost profits, $638,194 in reasonable royalty damages on sales not

subject to lost profits, and $951,578 in prejudgment interest.  Alternatively, should the jury

determine that Hologic is only entitled to reasonable royalty damages, Hologic seeks a 10%

royalty on infringing sales from August 2015 through March 31, 2018, yielding damages of

$2,973,265 and $171,679 in prejudgment interest, for a total of $3,144,944.

7.      In addition, Hologic seeks:

   a.      a judgment in favor of Hologic on all of its claims;

   b.      a judgment that Minerva takes nothing by its counterclaims;

   c.      an accounting of damages for post-verdict infringement;

   d.      an award of prejudgment and postjudgment interest;

   e.      enhanced damages under 35 U.S.C. § 284 for Minerva's willful

           infringement;

   f.      an award of attorneys' fees and costs under 35 U.S.C. § 285;

   g.      permanent injunctive relief against Minerva for infringement of the

           Patents-in-Suit;

   h.      an award of available remedies under both Delaware and Federal law, as a

           result of Minerva's unfair competition, including an order under 15 U.S.C

           Section 1117(a) for (1) Minerva's profits, (2) damages sustained by

           Hologic, and (3) the costs of the action as well as enhanced damages and

attorney's fees given the willful and deceptive nature of Minerva's conduct;

i.      an award of damages to Hologic for Minerva's tortious interference with Hologic's business relationships;

j.      an award of attorneys' fees and costs under 15 U.S.C. § 1117(a) for prosecuting its unfair competition claims and for defending against Minerva's unfair competition claims;

k.      an award of attorneys' fees and costs under 6 Del. C. § 2533(b) for prosecuting its deceptive trade practices claim;

l.      enhanced damages for Minerva's unfair competition, interfering with Hologic's business relationships in addition to engaging in deceptive trade practices pursuant to 6 Del. C. § 2533(c) and/or due to Minerva's willful conduct;

m.      permanent injunctive relief restraining from making false designations of origin, engaging in deceptive trade practices, engaging in unfair competition, and from interfering with Hologic's business relationships; and

n.      any other relief as this Court deems just and proper.

8.      On March 4, 2016, Minerva filed its Answer to Hologic's Second Amended Complaint and Counterclaims.  (D.I. 83.)  Minerva denies that it infringes—directly or indirectly (under inducement or contributory infringement)—any of the Asserted Claims of the Patents-in-Suit.  Minerva also denies that any alleged infringement has been willful.  Minerva further denies all allegations with regards to Hologic's claims of (i) unfair competition under 15 U.S.C. § 1125; (ii) deceptive trade practices under 6 Del. C. § 2532; (iii) unfair competition under Delaware

common law; and (iv) tortious interference with Hologic's business relationships under

Delaware common law.

       9.     In addition, Minerva alleges that all the Asserted Claims of the Patents-in-Suit are

invalid for lack of written description and lack of enablement under 35 U.S.C. § 112.  Minerva

further alleges that Hologic has engaged in (i) unfair competition under 15 U.S.C. § 1125(a) &

(c); (ii) deceptive trade practices under 6 Del. C. § 2532; (iii) unfair competition under the

Delaware common law; (iv) interference with contract/business advantage; (v) breach of

contract; and (vi) trade libel.

       10.    For requests for relief, Minerva seeks:

         a.     A judgment in favor of Minerva on all of its counterclaims;

         b.     Dismissal of all of Hologic's claims in their entirety with prejudice,

               including all patent claims that Hologic chose to drop or could have

               asserted in this case[2];

         c.     A judgment that Hologic takes nothing by their Second Amended

               Complaint;

         d.     A declaration that Minerva does not infringe, directly or indirectly,

               literally or by the doctrine of equivalents, any asserted claims of the

               Patents-in-Suit;

         e.     A declaration that each and every asserted claims of the Patents-in-Suit are

               invalid;

         f.     Awarding available remedies under both Delaware and Federal law, as a

               result of Hologic's unfair competition, including an order under 15 U.S.C

---

[2] Minerva intends to move to dismiss with prejudice the '898 and '989 patents, as well as any claims of the remaining '348 and '183 patents that Hologic has either never asserted or has dropped from the case.  Hologic will oppose.

Section 1117(a) for (1) Hologic's profits, (2) damages sustained by Minerva, and (3) the costs of the action as well as enhanced damages and attorney's fees given the willful and deceptive nature of Hologic's conduct;

g.      Awarding damages to Minerva for breach of contract, tortious interference with Minerva's business relationships and/or contracts, and trade libel;

h.      Awarding Minerva's attorneys' fees and costs under 15 U.S.C. § 1117(a) for Hologic's prosecution of its unfair competition claims;

i.      An order permanently enjoining Hologic, their affiliates and subsidiaries, and each of their officers, agents, servants and employees and those acting in privity of concert with them, from (1) making, circulating, or using any statement or video regarding any safety concerns about Minerva's device; and (2) making any marketing materials, regarding the efficacy of the NovaSure device that is inconsistent with or not supported by the data contained in an FDA-approved Summary of Safety and Efficiency Data (SSED) for NovaSure;

j.      A judgment that this is an "exceptional case" and an award of Minerva's reasonable attorneys' fees, expenses, and costs in this action under 35 U.S.C. § 285; and

k.      An award of such other relief as the Court may deem appropriate and just under the circumstances.

11.      On March 26, 2016, Hologic filed its Answer to Defendant's Counterclaims. (D.I. 106.) Hologic denies all allegations with regards to Minerva's claims of (i) unfair competition under 15 U.S.C. § 1125(a) & (c); (ii) deceptive trade practices under 6 Del. C. §

2532; (iii) unfair competition under the Delaware common law; (iv) interference with contract/business advantage; (v) breach of contract; and (vi) trade libel.

12.      Hologic denies that the Patents-in-Suit are invalid for lack of written description and lack of enablement under 35 U.S.C. § 112.  Hologic also alleges that Minerva's defenses and counterclaims regarding invalidity are barred by assignor estoppel.  This is the subject of Hologic's Motion for Summary Judgment of Assignor Estoppel, currently pending before the Court.  (D.I. 289).  Minerva has opposed and contends that assignor estoppel does not apply (D.I. 320 at 7-15) and is an is an equitable issue for the Court, not the jury.

13.      On December 15, 2017, the Patent Trial and Appeal Board ("PTAB") issued a Final Written Decision in IPR2016-00868 that all the claims of the '183 Patent are unpatentable over prior art.[3]

### C.      Claim Construction

14.      On February 24, 2017, the Court heard oral argument regarding claim construction.  (D.I. 225.)  On April 24, 2017, the Court issued its Memorandum Order on claim construction.  (D.I. 227.)

---

[3] **Hologic's Position**: Hologic objects to Minerva referencing at trial the IPR2016-00868 proceedings, or other IPR proceedings related to the Patents-in-Suit, including reference to or use of the Patent Trial & Appeals Board ("PTAB")'s Final Written Decision in IPR2016-00868.  The Final Written Decision in IPR2016-00868 addressed invalidity under 35 U.S.C. § 103.  Minerva does not assert invalidity under § 103 in the instant litigation.  Reference to such proceedings would also present a high risk of jury confusion under Federal Rules of Evidence, Rule 403, particularly where the Final Written Decision in IPR2016-00868 is on appeal to the Federal Circuit.  **Minerva's Position**: The IPR2016-00868 proceedings are relevant to multiple issues, including at least to Minerva's good faith defense to willfulness. Nonetheless, it is improper for Hologic to include this argument in the Proposed Pretrial Order when it should be brought by motion, such as a motion in *limine*.  Minerva intends to oppose and if the Court decides to entertain this issue, it should be addressed as part of the motions in *limine* process and count against Hologic's maximum number of motions in *limine*.

**D.      Asserted Claims of the Patents-in-Suit**

15.      On May 15, 2017, pursuant to the Court's May 8, 2017 oral ruling during a telephonic status conference, Hologic elected the following claims of the '183 and '348 Patents: '183 Patent, Claims 1, 2, 5, 6, 7, 9, 11, 13, 14, and 15; '348 Patent, Claims 1, 3, 5, 6, and 12.  On November 8, 2017, pursuant to the Court's November 1, 2017 oral Order, Hologic further reduced the number of asserted claims of the '183 and '348 Patents: '183 Patent, Claims 1, 2, 5, 6, 7, 9, 11, 13, 14, and 15; '348 Patent, Claims 1, 3 and 12.

16.      Pursuant to the Court's November 1, 2017 oral Order, Hologic further reduces the number of Asserted Claims of the '183 and '348 Patents as follows: claims 7, 9, 11, 13, and 14 of the '183 Patent and claim 1 of the '348 Patent.  These are the "Asserted Claims" for trial.

**E.      Pending Motions**

17.      The following motions are pending before the Court.

      a.      Minerva's Motion to Dismiss The '183 Patent [and the '989 Patent] Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c).  (D.I. 275, 364.)

      b.      Minerva's Motion for Partial Summary Judgment Regarding: (1) Invalidity; (2) Non-Infringement; (3) No Willfulness; and (4) No Unfair Competition.  (D.I. 277.)

      c.      Minerva's *Daubert* Motion to Exclude Certain Expert Opinions of: (1) Karl R. Leinsing and (2) Christopher C. Barry.  (D.I. 279.)

      d.      Hologic's Motions for Summary Judgment of (1) No Invalidity (D.I. 287); (2) Infringement (D.I. 288); and (3) Assignor Estoppel (D.I. 289).

      e.      Hologic's Motion to Exclude Expert Testimony.  (D.I. 290.)

      f.      Minerva's Motion to Strike The Expert Declaration of Karl Leinsing. (D.I. 317.)

g.      Hologic's Motion to Strike Minerva's Argumentative Appendices.  (D.I. 346.)

h.      Minerva's Motion to Strike Improper Testimony Regarding the Accused Product Relied upon by Plaintiffs in Their Opening Claim Construction Brief.  (D.I. 174.)[4]

**F.      Other Relevant Motions and Orders**

18.      On January 1, 2016, Minerva filed a Partial Motion to Dismiss and Motion for More Definite Statement.  (D.I. 43.)  On January 27, 2016, Minerva withdrew this motion.  (D.I. 62.)

19.      On December 14, 2015, Hologic filed its Motion for Preliminary Injunction.  On March 11, 2016, Minerva filed its Motion for a Preliminary Injunction.  (D.I. 94.)  On June 6, 2016, the Court denied the parties' cross motions for preliminary injunctions.  (D.I. 127; D.I. 128.)

20.      On August 10, 2016, the Court entered a Stipulated Protective Order.  (D.I. 140.)

**II.      JURISDICTION**

21.      The claims for patent infringement arise under the Patent Laws of the United States, Title 35 of the United States Code.  The claims for unfair competition arise under the Lanham Act, 15 U.S.C. § 1051 et seq., and the laws of the State of Delaware.

---

[4] **Hologic's Position**: Minerva's motion to strike a portion of Hologic's opening claim construction brief was mooted on April 24, 2017 when the Court construed the disputed claim terms without relying on the challenged material.  Minerva argued this motion during the claim construction hearing (*See, e.g.*, 2/24/17 Hrg. Tr. at 7:17-8:5, 44:25-45:18), but the Court suggested that the dispute was moot in light of narrowed claim construction of "pressure sensor." (*Id.* at 45:19-46:2, 47:21-48:3.)
**Minerva's Position**:  The Court never stated or even suggested that the dispute over Minerva's motion to strike is moot.  The Court's comments in Hologic's cited portions of the *Markman* Transcript relate to the parties' claim construction arguments for the term "pressure sensor," and do not address the merits of Minerva's motion to strike.

22.     This Court has subject matter jurisdiction over the causes of action pursuant to 28

U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§ 1121(a) and 1125(a).  This Court has jurisdiction

over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, as the state law claims

arise from the same common nucleus of operative facts as the federal claims.

23.     This Court has personal jurisdiction over Hologic and Minerva.

24.     Venue for these actions is proper in this District under 28 U.S.C. §§ 1391 and

1400(b).[5]

III.   **FACTS**

A.     **Uncontested Facts**

25.     The parties' joint statement of admitted facts requiring no proof is set forth in

Exhibit 1.[6]  The facts in Exhibit 1 are not disputed, or have been agreed to or stipulated by the

parties.  As such, these facts should become part of the evidentiary record in this case.

26.     Any party, without prior notice to all other parties, may read any or all of the

uncontested facts to the Court, and will be charged for the time used to do so.

---

[5] Minerva contests that Delaware is the most convenient venue.  In this regard, Minerva had
brought a motion to transfer to Northern District of California on December 22, 2015.  (D.I. 35,
36.)  The motion was denied by the Court on February 29, 2017.  (D.I. 82.)
[6] **Hologic's Position**: Hologic objects to Minerva not agreeing to include admitted facts in the
joint statement of uncontested facts, including (i) admitted fact "Minerva had knowledge of the
'348 Patent prior to the filing of the original Complaint," which Minerva admitted to in its
Answer at D.I. 83 at 7 ("Minerva admits that it had knowledge of the '348 patent prior to the
filing of the original Complaint."); and (ii) admitted fact "██████████████████████████
██████████████████," which Minerva admitted at its 30(b)(6) deposition, Dep. Tr. at 162:14-
163:7 ("███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████").  **Minerva's**
**Position**: Hologic's objection is not well-founded because the purported admitted facts lack
support in the documents Hologic cites or should be considered in context, which Hologic
misleadingly attempted to strip away.  Hologic also did not agree to include certain admitted
facts in the joint statement of uncontested facts, including admissions it made in response to
Minerva's requests for admission.

**B.     Contested Facts**

27.     Hologic's statement of issues of fact to be litigated at trial is set forth in <u>Exhibit 2</u>.

28.     Minerva's statement of issues of fact to be litigated at trial is set forth in

<u>Exhibit 3</u>.

29.     If this Court determines that any issue identified in the statements of issues of fact

is more properly considered an issue of law, it should be so considered.

**IV.     ISSUES OF LAW**

30.     Hologic's statement of issues of law to be litigated at trial is set forth in <u>Exhibit 4</u>.

31.     Minerva's statement of issues of law to be litigated at trial is set forth in <u>Exhibit 5</u>.

32.     If this Court determines that any issue identified in the statements of issues of law

is more properly considered an issue of fact, it should be so considered.

**V.     BIFURCATION OF NON-JURY ISSUES**

33.     Both parties seek a jury trial on all issues triable by a jury.

34.     <u>Hologic's Position</u>:  Non-jury issues that are to be tried by the Court include both

parties' requests for injunctive relief and Minerva's non-patent claims.  The parties' requests for

injunctive relief and Minerva's non-patent claims should be argued after the jury trial.  The

parties may summarize admitted evidence and/or present any additional evidence to support such

relief.  Hologic's defense of assignor estoppel should be resolved on summary judgment.

Minerva's proposal below (to try assignor estoppel in a bench trial after a jury trial) makes no

sense because the question posed by assignor estoppel as a question of law is whether or not

Minerva's invalidity defenses should go to the jury in the first instance.  Regarding Minerva's

non-patent claims, Minerva lacks of evidence of damage (despite Minerva's efforts to place such

claims in its verdict form), and therefore, Minerva's non-patent claims should be tried at a bench

trial.  Contrary to Minerva's assertions, Hologic argued actual damage at summary judgment,

and explained that Hologic's non-patent claims "into 'likelihood confusion' and the unfairness of Minerva's tactics are inquires properly for the jury." D.I. 324 at 46, 55.

35.   <u>Minerva's Position</u>:   Non-jury issues that are to be tried by the Court include both parties' requests for injunctive relief, Hologic's defense of assignor estoppel (as it requires a balancing of the equities), and Hologic's non-patent claims.  These issues shall be argued after the jury trial.  The parties may summarize admitted evidence and/or present any additional evidence to support such relief.  In response to Minerva's motion for summary judgment on Hologic's non-patent claims, Hologic argued that its claims should survive notwithstanding the lack of evidence demonstrating damage because Hologic is only seeking injunctive relief on its non-patent claims.  D.I. 324 at 45-55.  Consistent with that position, and the lack of any admissible evidence on damage, Hologic did not seek damages (e.g., in this pre-trial order or its attachments), until after Minerva explained that Hologic's claims are subject to bifurcation for a bench trial.  Minerva believes that Hologic lacks a good-faith basis to now seek damages on non-patent claims to avoid bifurcation.  With regards to assignor estoppel, Hologic's position makes no sense because assignor estoppel (including any issue or privity) is Hologic's equitable defense to Minerva's invalidity claims.  Assignor estoppel is an equitable doctrine that is decided by the Court based on a balancing of the equities.  As explained in Minerva's opposition to Hologic's motion for summary judgment on assignor estoppel (D.I. 320 at 7-15), a balancing of the equities in this case depends on all the facts related to Minerva's claims of invalidity under Section 112. Those claims of invalidity are based on issues of fact that the jury should resolve before the Court addresses whether Hologic's defense of assignor estoppel applies.

**VI.   WITNESSES**

**A.   Witness Lists**

36.   Hologic's List of Expert and Non-Expert Witnesses is attached as <u>Exhibit 6</u>.

37.    Minerva's List of Expert and Non-Expert Witnesses is attached as <u>Exhibit 7</u>.[7]

38.    The parties' witness lists are not a commitment that any of the witnesses listed are available or will appear for trial.  To the extent that a witness's circumstances change, or a witness otherwise becomes unavailable for trial, each party reserves the right to call that witness by deposition, as set forth below in this pretrial order.

39.    The parties further reserve the right to call: (1) one or more additional witnesses whose testimony is necessary to establish authenticity or admissibility of any trial exhibit, if that evidentiary status of the exhibit is challenged by an opposing party; (2) additional witnesses to respond to any issues raised by the Court's pretrial or trial rulings; (3) any witness live for impeachment purposes to the extent permitted by applicable rules; and (4) any witness who appears on the other party's witness list.

40.    During its case-in-chief, a party shall identify the witnesses it intends to call to testify at trial either in person by 7:30 p.m. Eastern two calendar days before the trial day during which those witnesses are expected to testify (e.g., if a party intends to call a witness to testify on Wednesday, the party must identify the witness by 7:30 p.m. Eastern on the previous Monday).

---

[7] **Hologic's position:** Hologic objects to Minerva's identification of Mr. Akos Toth as a witness at trial.  The Scheduling Order provides that the fact witness lists must be limited to "fact witness[es] disclosed during fact discovery" and that "[i]t is expected that all such witnesses will have been vetted during the fact discovery process."  (D.I. 265 ¶ 2.)  Minerva did not disclose Akos Toth during either fact or expert discovery in any of its four disclosures (7/29/16 Minerva's Rule 26(a)(1) disclosures; 2/6/17 Minerva's Supplemental Initial Disclosures; 2/6/17 Minerva's Second Supplemental Initial Disclosures; 6/23/17 Minerva's Third Supplemental Initial Disclosures), and he was never deposed.  **Minerva's position:** Hologic's objection is not well founded because Hologic itself served discovery requesting documents drafted by Akos Toth, received them, and put the knowledge of Mr. Toth at issue during expert discovery when Hologic's technical expert misleadingly relied on Mr. Toth's notebook excerpts as set forth in Minerva's *Daubert* motion. Yet Hologic chose not to seek a deposition of Mr. Toth in this case. Nonetheless, it is improper for Hologic to include this argument in the Proposed Pretrial Order when it should be brought by motion, such as a motion in *limine*. Minerva intends to oppose and if the Court decides to entertain this issue, it should be addressed as part of the motions in *limine* process and count against Hologic's maximum number of motions in *limine*.

41.     A party shall identify the order in which it intends to call such witnesses by 7:30 p.m. Eastern the day before the trial day during which those witnesses are expected to testify.

42.     The parties will confer nightly at 10:00 p.m. Eastern to update opposing counsel as the expected day that the party intends to complete its presentation of evidence.

**B.    Testimony by Deposition**

43.     The parties may offer some or all of the deposition testimony set forth herein at trial.  A party's decision not to introduce some or all of the testimony of a witness designated herein shall not be commented upon at trial.

44.     The deposition testimony that Hologic may offer into evidence is identified in Exhibit 8.

45.     The deposition testimony that Minerva may offer into evidence is identified in Exhibit 9.

46.     This pretrial order contains the entire universe of deposition designations, counter-designations, and objections to admission of deposition testimony; none of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.

47.     Any party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections.

48.     With respect to those witnesses who are expected to testify by deposition rather than in person, each party has designated the specific pages and lines of deposition testimony of the other side's fact witnesses that it may read or play during trial should that fact witness be unavailable to testify live.  No deposition testimony not previously designated pursuant to this Order, whether designated as affirmative or counter designations, may be later added for these witnesses, absent good cause shown.

49.     The designations and counter-designations will be read or played by video in chronological order.  Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the duration of its designations and counter-designations, respectively.

50.     If an exhibit is referenced in a deposition designation, the exhibit is admitted into evidence if it is included on the offering party's trial exhibit list and is not otherwise objected to, or is included on the joint trial exhibit list.

51.     All irrelevant and redundant material such as objections and colloquy between counsel will be eliminated when the deposition is read or viewed at trial.  [Hologic's proposal: "A party may, however, designate an objection if that objection (e.g., assertion of privilege) is relevant and otherwise material to the issues in the case."; Minerva proposal: remove this sentence].[8]

52.     Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

53.     If a party identifies a witness that it intends to call to testify at trial by deposition, then the party shall identify the specific pages and lines of the witness's deposition testimony that the party expects to read or play by 7:30 p.m. Eastern three days before the trial day during which the deposition testimony is expected to be read or played (e.g., if a party intends to read or

---

[8] **Hologic's Position**: A party is entitled to designate objections that are relevant and material to the issues in dispute.  For example, Minerva's witnesses refused to testify during deposition on a multitude of issues (claiming privilege).  Their assertion of privilege is directly relevant to at least assignor estoppel, willful infringement, and the foundation of alleged personal recollections.  **Minerva's Position**:  Hologic's argument should be taken up by the Court pursuant to the deposition designations procedure as described in paragraphs 42-56 as set forth herein.  Hologic does not identify specific testimony at issue and its argument is too general and ambiguous for Minerva to adequately respond at this time.

play a witness's deposition testimony on Wednesday, the party must identify the specific pages and lines of the witness's deposition testimony expected to be read or played by 7:30 p.m. on the previous Sunday).  For each such witness, the other party shall then identify its counter-designations to the identified testimony by 7:30 p.m. two days before the deposition testimony is expected to be read or played.  Anticipated designated testimony is listed in Exhibit 8 and Exhibit 9, and the parties shall not be permitted to add or assert different designations to deposition testimony designated or counter-designated in Exhibits 8 and 9.  But, the mere removal of designated testimony within a line of questioning does not mean that a counter-designation does not apply to other testimony within that same line of questioning.

54.     The parties shall meet and confer to resolve any objections to designated testimony by 10:00 p.m. Eastern that same day (two calendar days before such testimony is to be introduced.  Anticipated objections are listed in Exhibit 8 and Exhibit 9, and the parties shall not be permitted to add or assert different objections to deposition testimony designated or counter-designated.  If good faith efforts to resolve the objections fail, the objecting party will submit the transcript (clearly highlighting the parties' designations and counter-designations) and a cover letter concisely identifying the pending objections as well as a brief summary (i.e., [**Hologic's proposal**: "two sentence description"; **Minerva's proposal**: blank] describing both the basis of each objection and the offering party's response to it) to the Court by 11:00 p.m. Eastern on the day before such testimony is to be introduced.

55.     The Party offering the testimony is responsible for preparing video deposition clips of all designated testimony for that witness. A copy of the video deposition clips shall be provided to the opposing party no later than 7:30 p.m. Eastern the day before the deposition testimony is expected to be read or played.

56.     When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played.

57.     To the extent deposition designations are read or played in open court, each side will be charged the time taken to read or play its designations.

## VII.   EXHIBITS

### A.   Trial Exhibits

58.     Hologic's list of exhibits that it may offer at trial, except demonstrative exhibits and exhibits to be used solely for impeachment, and Minerva's objections to Hologic's exhibits, are attached as Exhibit 10.  A key to the objection codes is appended at the end of the exhibit.

59.     Minerva's list of exhibits that it may offer at trial, except demonstrative exhibits and exhibits to be used solely for impeachment, and Hologic's objections to Minerva's exhibits, are attached as Exhibit 11.  A key to the objection codes is appended at the end of the exhibit.

60.     Hologic's trial exhibits will be identified with the PTX prefix, starting with PTX-0001.  Minerva's trial exhibits will be identified with the DTX prefix, starting with DTX-0001.  Joint trial exhibits, including physical trial exhibits, will be identified with JTX numbers, starting with JTX-0001.

61.     The parties agree that exhibits to be used solely for impeachment and/or cross-examination do not need to be disclosed in advance of being used at trial.  In addition, the parties agree that exhibits to be used solely for impeachment need not be included on the lists of trial exhibits.

62.     This pretrial order contains the entire universe of exhibits to be used in any party's case-in-chief, as well as all objections to the admission of such objections, neither of which shall be supplemented without approval of all parties or leave of the Court, on good cause shown.  Exhibits not listed will not be admitted unless good cause is shown.

63.     Exhibits not objected to will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony.  Nothing herein shall be construed as a stipulation or admission that the document is entitled to any weight in deciding the merits of this case. The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

64.     All exhibits shall be deemed *prima facie* to be authentic, subject to the right of the party against whom the exhibit is introduced to adduce evidence to the contrary. The parties stipulate to the authenticity of all exhibits, except where specifically indicated with the specific reasons for the objection noted.  Any objection to a document's authenticity must be made in this Pretrial Order, and must be established according to the Federal Rules of Evidence.

65.     Any party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted, may be used equally by each party, subject to any limitations as to its admission. The listing of a document on a party's exhibit list is not an admission that such document is relevant, or admissible, when offered by the opposing side for the purpose that the opposing side wishes to admit the document. Each party reserves the right to object to the relevance of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

66.     Legible copies of United States patents, file histories, and patent applications may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.

67.     On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

68.     A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial.

69.     The parties shall make available for inspection physical exhibits to be used at trial, labeled with an exhibit number.

**B.     Demonstrative Exhibits**

70.     Hologic's demonstratives will be identified with PDX numbers, starting with PDX-0001.  Minerva's demonstratives will be identified with DDX numbers, starting with DDX-0001.

71.     The parties agree that the demonstrative exhibits that the parties intend to use at trial do not need to be included on their respective exhibit lists that are part of this Final Pretrial Order.

72.     The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side.  However, for video or animations, the party seeking to use the demonstrative will provide it to the other side electronically. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation of the exhibits.

**C.     Exchange of and Objections to Trial Exhibits and Demonstratives**

**1.     Trial Exhibits for Direct Examination**

73.     A party will provide exhibits to be used in connection with direct examination by deposition by 7:30 p.m. Eastern three nights before their intended use.  A party will provide exhibits to be used in connection with live direct examination and the counter-designated deposition testimony by 7:30 p.m. Eastern two nights before their intended use.  By 9:00 p.m. one night before their intended use, the other party will provide its objections to all aforementioned identified exhibits.  The parties shall meet and confer by 10:00 p.m. Eastern the night before the use of any exhibits in order to resolve any objections.  If good faith efforts to

24

resolve the objections fail, the party objecting to the exhibits shall bring its objections to the

Court's attention prior to the witness being called to the witness stand.  Failure to comply with

these procedures, absent an agreement by the parties and approval by the Court, will result in

waiver of the use of an exhibit or waiver of objection to the exhibit.

### 2.     Demonstratives for Direct Examination

74.     A party will provide demonstratives to be used in connection with direct

examination by 7:30 p.m. Eastern the night before their intended use.  By 9:00 p.m. the before

their intended use, the other party will provide its objections.  The parties shall meet and confer

by 10:00 p.m. Eastern the night before the use of any exhibits in order to resolve any objections.

If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring

its objections to the Court's attention prior to the witness being called to the witness stand.

Failure to comply with these procedures, absent an agreement by the parties and approval by the

Court, will result in waiver of the use of a demonstrative or waiver of objection to the

demonstrative.

### 3.     Trial Exhibits and Demonstratives for Opening and Closing Statements

75.     A party will identify and provide trial exhibits and demonstrative exhibits to be

used in connection with opening and closing statements by 7:30 p.m. Eastern the night before

their intended use, and objections will be provided no later than 9:00 p.m. Eastern the night

before their intended use.  The parties shall meet and confer by 10:00 p.m. Eastern the night

before the use of any demonstratives in order to resolve any objections.  If good faith efforts to

resolve the objections fail, the party objecting to the exhibits shall bring its objections to the

Court's attention prior to opening and closing statement.  Failure to comply with these

procedures, absent an agreement by the parties and approval by the Court, will result in waiver of

the use of a demonstrative or waiver of objection to the demonstrative.

76.     Demonstratives created during testimony or demonstratives to be used for cross-examination do not need to be provided to the other side in advance of their use. In addition, blow-ups, highlighting of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use as long as the party has identified its intent to use the trial exhibit and/or deposition testimony according to the provisions of this Order.

## VIII.   AMENDMENT OF THE PLEADINGS

77.     This Court's rulings and decisions on pending motions may significantly resolve or affect the issues otherwise to be tried in this case.

78.     The parties are not seeking any amendments to the pleadings at this time.

## IX.     OBJECTIONS TO EXPERT TESTIMONY

79.     The parties request that the Court rule at trial on any objections to expert testimony as beyond the scope of expert Rule 26 disclosures.  The time required for the parties to argue and for the Court to decide any such objections shall be deducted from one or both parties' trial presentation time in amounts to be determined by the Court.

80.     Before each expert takes the stand, the parties shall provide copies of that expert's report(s) to the Court.  However, unless expressly moved and accepted into evidence, the expert report(s) shall be used only for the purpose of ruling on objections to expert testimony offered at trial.

## X.     DISCOVERY

81.     Each party has completed discovery.

## XI.     MOTIONS *IN LIMINE*

82.     The parties shall meet and confer on the maximum number of motions *in limine* or, if no agreement is reached, the Court will decide during the pre-trial conference.

83.     The parties shall file motions *in limine* on June 25, 2018.  Responses are due July 2, 2018.  Replies are due July 6, 2018.

84.     Each *in limine* request shall contain the authorities relied upon; each *in limine* request may be supported by a maximum of three (3) pages of argument and may be opposed by a maximum of three (3) pages of argument, and the side making the in limine request may add a maximum of one (1) additional page in reply in support of its request.

85.     Each motion *in limine* shall be separately filed.

## XII.   NUMBER OF JURORS

86.     There shall be eight jurors and two alternate jurors.

## XIII.  LENGTH OF TRIAL

87.     This case is currently scheduled for a 10-day jury trial beginning on July 16, 2018 at 9:30 a.m. (D.I. 265, ¶ 6.)  The parties propose that each side receive 30 hours for its trial presentations.

88.     <u>Hologic's Proposal</u>: The trial will be timed. Unless otherwise ordered, time will be charged to a party for its direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by the other party, designated and counter-designated testimony by deposition, and all sides' argument on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits, opening and closing statements. Time will not be charged for jury voir dire.  Opening statements will be limited to 60 minutes and closing arguments will be limited to 90 minutes.

89.     <u>Minerva's Proposal</u>: The trial will be timed. Unless otherwise ordered, time will be charged to a party for its direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by the other party, designated and counter-designated testimony by deposition, and all sides' argument on objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits.  Time will not be charged for opening statements, closing arguments, or jury voir dire.  Opening statements will be limited to 60 minutes and closing arguments will be limited to 90 minutes.

90.     The parties will keep a running total of trial time used and compare such tallies daily. Disputes, if any, will be presented to the Court if necessary.  If any party uses all of its allotted trial time, the Court will terminate that party's trial presentation, as the Court deems warranted.

## XIV.   BRIEF STATEMENT OF INTENDED PROOFS

91.     Hologic's Brief Statement of Intended Proofs is attached as <u>Exhibit 12</u>.

92.     Minerva's Brief Statement of Intended Proofs is attached as <u>Exhibit 13</u>.

## XV.   ADDITIONAL MATTERS

### A.     Order of Presentation of Evidence

93.     <u>Hologic's Position</u>: Presentation of evidence will follow the burden of proof. Hologic will go first and present its case-in-chief on infringement (including willful infringement), assignor estoppel,[9] and non-patent claims.  Minerva will then present its response to Hologic's case-in-chief.  Minerva will then present its case-in-chief on invalidity and its non-patent claims.  Hologic will then present its rebuttal in support of its case-in-chief and present its response to Minerva's case-in-chief.  Minerva will present its rebuttal in support of its case-in-chief.

94.     <u>Minerva's Position</u>: Presentation of evidence will follow the burden of proof. Hologic will go first and present its case-in-chief on infringement (including willful infringement) and unfair competition.  Minerva will then present its response to Hologic's case-in-chief and its case in chief on invalidity and unfair competition.  Hologic will then present its response to Minerva's case-in-chief.

### B.     Voir Dire

---

[9] Minerva contends that assignor estoppel is for the Court to decide and that there are no issues for the jury to decide as to assignor estoppel.  Hologic agrees that assignor estoppel can be decided as a matter of law by the Court and respectfully requests an Order on its pending motion for summary judgment on assignor estoppel as it will significantly streamline issues for trial.

95.     The Court will conduct the initial *voir dire* of potential jurors.  Thereafter, the parties shall be permitted to conduct additional *voir dire*. Each party shall be limited to twenty (20) minutes for its *voir dire* of individual jurors in chambers.  No later than June 11, 2018 each party will file with the Court the following materials: (1) proposed *voir dire lists* (i.e., companies, attorneys, witnesses, and subject areas); and (2) any *voir dire* questions the parties wish the Court to ask during jury selection.

### C.     Jury Instructions and Verdict Forms

96.     The parties will file with the Court by June 11, 2018: (1) proposed jury instructions; (2) special verdict forms or interrogatories.

### D.     Sequestration of Witnesses

97.     Pursuant to Federal Rule of Evidence 615, fact witnesses, other than witnesses who have already testified and been excused, shall be sequestered and prevented from hearing the testimony of other witnesses. Pursuant to provision (2) of Rule 615, this exclusion rule will not apply to the officer or employee designated by each party as its representative.

98.     Expert witnesses disclosed under Federal Rule of Civil Procedure 26(a)(2)(B) shall not be excluded for either fact or expert testimony.

### E.     Jury Notes

99.     The parties agree that the jurors shall be provided with binders and pens and permitted to write notes by hand in the binders during the presentations of the parties and bring these notes as well as the provided jury notebook into the deliberation room. The binders shall also include copies of each of the Patents-in-Suit and may include any other materials approved by the Court.

100.     The parties further propose that the jurors be instructed not to exchange or share their notes with each other (though they may discuss the contents of their notes) and that the

jurors' notes be collected by the clerk after each daily recess, and collected and destroyed without review after the jury's discharge.

### F.   Handling of Confidential Information at Trial

101.    The parties generally agree that the Court should be open to the public for the entirety of the presentation of evidence at trial.  The parties agree to follow the provisions in the Stipulated Protective Order entered in this case regarding the confidentiality of exhibits used at trial.

102.    Exhibits marked "Confidential," "Outside Counsel's Eyes Only" or "Outside Counsel's Eyes Only – Computer Source Code" may be displayed on monitors visible to the Court, the jury, and outside counsel, but will not otherwise be displayed in the courtroom during trial and will not be filed publicly.  Further, the parties agree to meet and confer as needed regarding the use of confidential exhibits (*e.g.*, financial data) at trial.

### G.   Set-Up of Electronic Computer Devices

103.    The parties request that the Court grant access to the Courtroom on the business day before trial begins to allow them to set up electronic and computer devices to be used during the trial. To the extent that both sides will be sharing common equipment in the Courtroom, each side will share the cost of that equipment.

### H.   Federal Judicial Center Introduction to Patent System Video

104.    The parties agree that the video will be played and the sample patent will be handed out to all prospective jurors at the beginning of the *voir dire* process.

## XVI.  SETTLEMENT

105.    The parties certify that they have engaged in a good faith effort to explore the resolution of this controversy by settlement and that no agreement has been reached.  As such, the parties intend to proceed to trial.

DATED: June 7, 2018

*s/ Karen L. Pascale*

_____

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Karen L. Pascale (#2903)
Pilar G. Kraman (#5199)
Rodney Square
1000 North King Street
Wilmington, DE  19801
Telephone: (302) 571-6600
kpascale@ycst.com
pkraman@ycst.com

*Of Counsel:*

Matthew M. Wolf
Marc A. Cohn
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
matthew.wolf@arnoldporter.com
marc.cohn@arnoldporter.com

Ryan J. Casamiquela
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
ryan.casamiquela@arnoldporter.com

David A. Caine
Philip W. Marsh
Assad H. Rajani
**ARNOLD & PORTER KAYE SCHOLER LLP**
Five Palo Alto Square
3000 El Camino Real, Suite 500
Palo Alto, CA 94306
Telephone: (650) 319-4500
david.caine@arnoldporter.com
philip.marsh@arnoldporter.com
assad.rajani@arnoldporter.com

*Attorneys for Plaintiffs, Hologic, Inc.*
*and Cytyc Surgical Products, LLC*

*s/ Benjamin J. Schladweiler*

_____

**GREENBERG TRAURIG, LLP**
Benjamin J. Schladweiler (#4601)
1007 North Orange Street, Suite 1200
Wilmington, DE  19801
(302) 661-7000
schladweilerb@gtlaw.com

*Of Counsel:*

Vera M. Elson
Dale R. Bish
Christopher D. Mays
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
650 Page Mill Road
Palo Alto, CA  94304
(650) 493-9300

Edward G. Poplawski
Olivia M. Kim
Erik Carlson
Neil N. Desai
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
633 West Fifth Street, Suite 1550
Los Angeles, CA  90071
(323) 210-2900

*Attorneys for Defendant,*
*Minerva Surgical, Inc.*

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of

the action, unless modified by the Court to prevent manifest injustice.


Dated: _____ 2018


_____

U.S.D.C.  JUDGE