IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HOLOGIC, INC., and CYTYC SURGICAL
PRODUCTS, LLC,

                Plaintiffs,

  vs.

MINERVA SURGICAL, INC.,

                Defendant.

**1:15-cv-1031**

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Minerva Surgical Inc.'s ("Minerva")
renewed motion for judgment as a matter of law of no patent damages or, in the
alternative, for a new trial for reasonable royalty (D.I. 521); Minerva's motion for a new
trial for Lanham Act and breach of contract claims (D.I. 523); Minerva's motion for an
injunction under the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532 (D.I. 525);
plaintiffs Hologic, Inc.'s and CYTYC Surgical Products, LLC's (collectively, "Hologic")
motion for attorney fees and related nontaxable costs (D.I. 528); Hologic's motion for
enhanced damages (D.I. 530); Hologic's motion for a permanent injunction (D.I. 532); and
Hologic's motion for an accounting, supplemental damages, ongoing royalties, pre-
judgment interest, and post-judgment interest (D.I. 534).

I.      BACKGROUND

In this patent infringement action, Hologic alleged that Minerva infringed its patents
involving a system and method to detect uterine perforations during uterine ablation.
Hologic alleged that Minerva infringed U.S. Patent No. 6,872,183 ("the '183 Patent"), titled
"System and Method for Detecting Perforations in a Body Cavity," filed May 24, 2004, and
issued March 29, 2005, and U.S. Patent No. 9,095,348 ("the '348 Patent"), titled "Moisture

Transport System for Contact Electrocoagulation," filed August 8, 2013, and issued August 4, 2015 (collectively "the Patents-in-Suit"). The '183 patent involves method claims and the asserted claim of the '348 patent is a system or apparatus claim.

Prior to trial, the Court addressed cross-motions for summary judgment on invalidity and infringement and Hologic's motion for summary judgment on the issue of assignor estoppel. Minerva asserted the patent claims at issue were invalid for lack of written description and enablement. The Court found Minerva's invalidity defenses were barred by assignor estoppel.[1] The Court also stated that even if Minerva was not estopped from asserting the defense, its arguments lacked merit in that Minerva's Section 112 arguments rested on a flawed definition of the claims that ignored the Court's claim constructions, and Hologic had shown that the '183 and '348 patent disclosures adequately described the claims as construed by the Court (D.I. 407, at 25-26). The Court further found as a matter of law that, under the Court's claim construction, Hologic had shown that Minerva's accused product infringed the asserted claims of the patents. *Id.* at 26.

---

[1] The determination of estoppel was based on undisputed evidence that:

> [the inventor of the '183 and '348 patents, Csaba] Truckai founded Minerva. He used his expertise to research, develop, test, manufacture, and obtain regulatory approval for the Minerva EAS. It is undisputed that Truckai's job responsibilities as Minerva's President and CEO included bringing the accused product to market to directly compete with Hologic. Hologic contends the accused product incorporates the same patented technology that Truckai's company sold to Hologic. It is undisputed that Truckai, an inventor on each of the Patents-in-Suit, executed broad assignments of his inventions to NovaCept, which was then sold to Hologic's predecessor for $325 million dollars.

D.I. 407, Memorandum and Order at 18). Hologic argued in essence "that—more than 19 years after Mr. Truckai executed his initial patent assignment—Minerva and Truckai attempt[ed] to destroy the value of what Truckai sold to Hologic so that Minerva [could] directly compete with Hologic using the patented technology he already sold to Hologic." *Id.* at 18-19. The Court found that the balance of equities favored a finding of privity between Truckai and Minerva and required the application of assignor estoppel to Minerva's defenses to Hologic's patent infringement claims (*Id.* at 21).

The action proceeded to trial on the patent issues of damages and willfulness and on Minerva's counterclaims for false advertising and breach of contract. Those matters were tried to a jury from July 16, 2018, to July 27, 2018. The jury found Hologic was entitled to damages for lost profits in the amount of $4,200,529.75, and for royalties not included in lost profits in the amount of $587,138.48.[2] The jury further found that Hologic's infringement was not willful. Hologic prevailed on Minerva's counterclaims—the jury rejected Minerva's counterclaims for breach of contract and false advertising under the Lanham Act violations (D.I. 498). The Court entered judgment on the verdict, subject to revision pursuant to any rulings on post-trial motions, on August 13, 2018 (D.I. 520).

In its pending motions, Hologic argues that this case warrants enhanced damages and asks the Court to amend the judgment by doubling Hologic's damages award of $3,752,550. Hologic contends Minerva's failure to abide by the Court's claim construction justifies enhancement and argues that Minerva should have known that its proposed claim constructions were baseless, knew that owning its own patents was no defense to infringement of Hologic's patents, knew that the presence of additional features on its device was not a defense to infringement, and should have known that it had no invalidity defense. Hologic also points to other allegedly egregious conduct by Minerva such as its failure to take remedial action, infringement after entry of judgment, its copying of the NovaSure system, and its attempts to conceal its infringement of the '348 patent by adding false statements to its operator's manual. Hologic further argues that Minerva's size and financial condition also weigh in favor of enhancement of damages.

---

[2] The jury verdict totaled $4,787,668.23, which Hologic argues represents an effective rate of 16.1% of total Minerva handpiece revenues.

Minerva argues in response that a finding of willfulness is a prerequisite to awarding enhanced damages under Section 284. Further, it argues that even if the Court were to consider enhancement, the evidence would not support imposition of enhanced damages under 35 U.S.C. § 284.

Hologic also moves for an award of supplemental damages from the date of the last sales records produced (April 1, 2018) to the date of judgment based on an effective royalty rate of 16.1%. It seeks an accounting and an ongoing royalty for post-judgment infringing sales at the rate of 20% plus a 10% enhancement. It also seeks prejudgment interest calculated at the prime rate compounded quarterly from the dates of infringement through the date of judgment ($270,533) and post-judgment interest at the legal rate under 28 U.S.C. § 1961.

Minerva opposes the motion for supplemental damages and argues Hologic's calculation is not supported by any evidence. Though it concedes that Hologic is entitled to recover prejudgment interest, it urges the Court to apply the treasury bill rate. It does not challenge Hologic's right to postjudgment interest at the legal rate.

Minerva also renews its motion for JMOL, it contends the Court should award no damages to Hologic, contending that none were proven at trial. It contends the award of lost profits was improper and is not supported by evidence. It also argues Hologic failed to prove its reasonable royalty damages because the jury was not instructed to apportion the damages to reflect the infringing features of the product. Alternatively, it moves for a new trial on reasonable royalty.

Minerva also moves for a new trial on its Lanham Act and breach of contract claims. It argues that Hologic violated Federal Rule of Civil Procedure 26(e) and withheld highly relevant evidence relating to Minerva's counterclaims. It also contends the Court

erred in striking and precluding testimony on the quantum of Minerva's harm resulting from false advertising and an intertwined breach of a Non-disclosure Agreement. Further, it contends the Court erred in dismissing Minerva's state-law counterclaim that Hologic falsely advertised the efficacy rates for its product. It argues that the Court's rulings made it impossible for Minerva to fully present its case on its complicated claims involving Hologic's continuous scheme to attack Minerva as a competitor with misleading efficacy rates for products and "Scorched Earth" campaign to prevent competition.

Minerva also seeks a permanent injunction under the DTPA.[3] It seeks an order enjoining Hologic from engaging in conduct that disparages Minerva's Endometrial Ablation System ("Minerva's EAS") through their false and misleading representations about Minerva's characteristics and safety. Specifically, it moves for (1) an injunction prohibiting Hologic from disparaging the safety of Minerva's EAS, including prohibiting the use of the 20-year old liver videos that have nothing to do with Minerva's technology, and (2) a corrective disclosure to the market explaining Hologic's false and misleading use of the videos.

In response, Hologic argues that because all of Minerva's counterclaims were rejected by the jury or the Court, there is no basis for granting Minerva any equitable relief. It contends that, although the Court reserved ruling on an equitable remedy, that issue became moot when the jury returned a verdict in favor of Hologic on Minerva's Lanham Act claim.

---

[3] Minerva stated at trial that the core of its theories "are the same under the state law claims as they are under the Lanham Act." (D.I. 514, Trial Transcript (T. Tr.) at 2214) It further stated it primarily relied on the Lanham Act, but asserted the state law DTPA claim "in particular for injunctive relief." (*Id.*, T. Tr. at 2216) At the conclusion of the parties' presentation of evidence, the Court indicated dismissed the DTPA claim as it related to loss damages but reserved the issue of whether Minerva was entitled to equitable relief (i.e., an injunction) for resolution later by the Court. (*Id.*, Trial Tr. at 2217-18)

As a threshold matter, the Court of Appeals for the Federal Circuit has now affirmed the finding by the United States Patent and Trademark Office, Patent Trial and Appeal Board ("PTAB") on *inter partes* review ("IPR") that claims 1-15 of the '183 are invalid as obvious. (D.I. 614-1, Ex. A, Federal Circuit Opinion) The claims challenged in the IPR include all claims of the '183 patent Hologic asserted at trial. Minerva argues that Hologic no longer has any cause of action based on the '183 patent, and any pending litigation with respect to that patent is moot. Hologic argues that the matters are not moot unless and until the Patent Office cancels the patent.[4]

The Court finds the Federal Circuit's determination does not affect the jury verdict in this case. The jury was asked to assess damages for infringement of the asserted claims of both the '183 patent and the '348 patent, without separately apportioning damages between the asserted claims of the two patents. The jury's damages determination can be adequately supported by the finding of infringement of Claim 1 of the '348 patent. The infringement of the '348 patent apparatus claim and the '183 patent method claims were interrelated, but a finding that the method claims are not valid does not affect the finding of infringement as to the apparatus claim. In other words, one can infringe the apparatus claim even if the method claims are invalid.

Hologic's motion for a permanent injunction against Minerva's continued infringement of the '183 patent, however, will be rendered moot by the Federal Circuit decision. Similarly, Hologic's motions for supplemental and/or enhanced damages and

---

[4] The Patent Office cannot cancel claims of patents until after appeal. *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 645 (Fed. Cir. 2011). Although the PTAB has been affirmed, the time to file petitions for rehearing, reconsideration and/or certiorari has not expired. Nonetheless, the Court finds it unnecessary at this point to address Hologic's motion for injunctive relief. It is not likely that the Federal Circuit will reconsider its decision or that the Supreme Court will grant certiorari. Should the decision be reversed, Hologic may again move for an injunction.

ongoing royalties for infringement of the '183 patent will be moot. Any supplemental or enhanced damages for infringement of the '348 patent can be awarded only up the date of expiration of the '348 patent.[5] The Federal Circuit's findings as to the '183 patent (method claims) do not affect the Court's findings of assignor estoppel on the asserted claim of the '348 patent.[6]

The Court held oral argument on the present motions on February 26, 2019. The Court has considered the record in this case, the substantial evidence in the record, the parties' post-trial submissions, and the applicable law, and finds as follows.

## II.  LAW

### A.  Standard of Review

The law of the regional circuit—here the Third Circuit—governs the standards for deciding motions for JMOL under Fed. R. Civ. P. 50(b) and new trial under Fed. R. Civ. P. 59(a). *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1325 (Fed. Cir. 2016); *Leader Techs., Inc. v. Facebook, Inc.*, 678 F.3d 1300, 1305 (Fed. Cir. 2012). Under Rule 50(b), in ruling on a renewed motion, "the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b). A judgment as a matter of law is appropriate when "the verdict is not supported by legally sufficient evidence." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). In the Third Circuit, a "court may grant a judgment as a matter of law contrary to the verdict only if 'the record is critically deficient of the minimum quantum of evidence' to sustain the verdict." *Acumed LLC v. Advanced*

---

[5] The '348 Patent expired on November 19, 2018.

[6] The PTAB did not address the assignor estoppel issue. The Federal Circuit recently concluded "by allowing 'a person who is not the owner of a patent' to file an IPR, [35 U.S.C. § 311(a)] unambiguously dictates that assignor estoppel has no place in IPR proceedings." *Arista Networks, Inc. v. Cisco Sys., Inc.*, 908 F.3d 792, 804 (Fed. Cir. 2018).

*Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009) (quoting *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083 (3d Cir.1995)).

"In considering that issue the court 'may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version.'" *Id.* (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.1993)). "Entry of judgment as a matter of law is a 'sparingly' invoked remedy, granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted). A renewed post-verdict JMOL motion under Federal Rule of Civil Procedure Rule 50(b) "may not be made on grounds not included in the earlier [Rule 50(a)] motion." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1105 (Fed. Cir. 2003).

Federal Rule of Civil Procedure 59(e) expressly recognizes a court's authority to alter or amend its judgments. Fed. R. Civ. P. 59(e). "Consistently with this original understanding, the federal courts generally have invoked Rule 59(e) only to support reconsideration of matters properly encompassed in a decision on the merits[,]" and legal issues collateral to the main cause of action. *White v. New Hampshire Dep't of Emp't Sec.*, 455 U.S. 445, 451 (1982). The principal limitation on that discretion is that a motion to amend "may not be granted where to do so would undermine the jury's fact-finding role and trample on the defendant's Seventh Amendment right to a jury trial." *Robinson v. Watts Detective Agency, Inc.*, 685 F.2d 729, 742 (1st Cir. 1982). Specifically, Rule 59(e) has been invoked to correct damage awards that were improperly calculated, and to include prejudgment interest to which a party was entitled. *See Lubecki v. Omega*

*Logging, Inc.*, 674 F. Supp. 501 (W.D. Pa. 1987), *aff'd*, 865 F.2d 251 (3d Cir. 1988); 11 Wright and Miller, Federal Practice and Procedure, § 2817 n. 28–29.

The rule governing motions to alter or amend judgment is the proper basis for bringing a request for prejudgment interest. *J.A. McDonald, Inc. v. Waste Sys. Int'l Moretown Landfill, Inc.*, 247 F. Supp. 2d 542, 546 (D. Vt. 2002). The method used to calculate amount of judgment and prejudgment interest involves matters of law and is based on undisputed facts, and therefore is appropriately resolved by way of a motion to amend judgment. *Commercial Assocs. v. Tilcon Gammino, Inc.*, 801 F. Supp. 939, 942 (D.R.I. 1992), *aff'd* 998 F.2d 1092 (1st Cir. 1993).

B.    Patent Damages

"To recover lost profits, 'a patent owner must prove a causal relation between the infringement and its loss of profits.'" *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1240–41 (Fed. Cir. 2017) (quoting *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001) (internal quotation marks and citation omitted). The burden is on the patentee to show a reasonable probability that but for the infringing activity, the patentee would have made the infringer's sales. *Id.* "'There is no particular required method to prove but for causation' in patent cases." *Id.* (quoting *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284 (Fed. Cir. 2017)). A useful, but non-exclusive, method to establish the patentee's entitlement to lost profits is the four-factor test articulated in *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). *Id.* "The Panduit test requires the patentee to show: (1) 'demand for the patented product'; (2) 'absence of acceptable noninfringing substitutes'; (3) 'manufacturing and marketing capability to exploit the demand'; and (4)

'the amount of profit that . . . would have [been] made.'" *Id.* (quoting *Panduit*, 575 F.2d at 1156).

The proper inquiry under the first Panduit factor "asks whether demand existed in the marketplace for the patented product, i.e., a product 'covered by the patent in suit or that directly competes with the infringing device.'" *Id.* (quoting *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009) (internal quotation marks and citation omitted)). "All a patentee must do is 'sell[ ] some item, the profits of which have been lost due to infringing sales.'" *Id.* at 1241-42 (quoting *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1265 (Fed. Cir. 2013) (internal quotation marks and citation omitted)). "[T]he first Panduit factor 'does not require any allocation of consumer demand among the various limitations recited in a patent claim.'" *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1360 (Fed. Cir. 2012) (quoting *DePuy Spine*, 567 F.3d at 1330). For purposes of the first *Panduit* factor, products are interchangeable when "the patent owner and the infringer sell products sufficiently similar to compete against each other in the same market segment." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993).

With respect to the second *Panduit* factor—absence of acceptable noninfringing substitutes—a patentee need not negate every possibility, absent the infringement, that the purchaser might not have purchased a product other than its own. *Presidio Components,* 702 F.3d at 1360 (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). The patentee need only show that there was a reasonable probability that the sales would have been made "but for" the infringement. *Id.*

The Federal Circuit has held that a patent owner may satisfy the second *Panduit* element by substituting proof of its market share for proof of the absence of acceptable

substitutes. *BIC Leisure Prods.*, 1 F.3d at 1219; *see, e.g., Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1380 (Fed. Cir. 2015) (affirming analysis based on "market share" approach). This market share approach allows a patentee to recover lost profits, despite the presence of acceptable, noninfringing substitutes, because it nevertheless can prove with reasonable probability sales it would have made "but for" the infringement. *Id*. *Panduit's* second factor, properly applied, ensures that any proffered alternative competes in the same market for the same customers as the infringer's product. *Id*. Similarity of products is necessary in order for market share proof to show correctly satisfaction of *Panduit 's* second factor. *Id*. Consistent with Federal Circuit precedent, a patentee can reconstruct the 'but for' market by segmenting the market and determining lost profits based on its market share, assuming the patent owner and the infringer compete in the same market. *Bic Leisure*, at 1219; *see also Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1378 (Fed. Cir. 2003).

C.    Interest

"Prejudgment interest on a damages award for patent infringement 'is the rule' under 35 U.S.C. § 284[.]" *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996). The purpose of prejudgment interest is "to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983). An award of interest from the time that the royalty payments would have been received merely serves to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of the money between the time of infringement and the date of the judgment. *Id*. at 655-56. "The rate of prejudgment interest and whether it should be compounded or uncompounded are

matters left largely to the discretion of the district court" and "must be guided by the purpose of prejudgment interest, which is to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (internal quotation marks and citations omitted).

Regarding the rate at which prejudgment interest is calculated, the district court has the discretion to determine whether to use the prime rate, the prime rate plus a percentage, the U.S. Treasury rate ("T-bill rate"), a state statutory rate, the corporate bond rate, or whatever rate the court deems appropriate under the circumstances. *See generally Allen Archery, Inc. v. Browning Manuf. Co.*, 898 F.2d 787, 789 (Fed. Cir. 1990). "A case survey indicates that the prime rate is often selected by courts where the patentee is a large, established and credit-worthy corporation." *The Boeing Co. v. United States,* 86 Fed. Cl. 303, 323 & n.22 (Fed. Ct. Cl. 2009) (citing cases). The selection of the prime rate makes even more sense if it is consistent with the interest rate charged to the patent holder for short-term, unsecured borrowing, i.e., its cost of capital. *Id.* Similarly, courts most often compound interest, reflecting, in this regard, not only the expectation of a prudent, commercially reasonable investor, but also the way that post-judgment interest is calculated under 28 U.S.C. § 1961(c)(3). *Id.* In making a determination regarding the frequency of compounding, i.e. annually, semi-annually, quarterly, etc., courts consider how often the licensee would have made payments in accordance with the hypothetical negotiation. *See Boeing,* 86 Fed. Cl. at 323; *see Datascope,* 879 F.2d at 829 (finding no error in compounding annually); *Brunswick Corp. v. United States*, 36 Fed. Cl. 204, 219 (Fed. Cl. 1996), *aff'd*, 152 F.3d 946 (Fed. Cir. 1998) (stating that compounding interest annually is more likely to place the patentee in the same financial position it otherwise

would have held had royalties been timely paid "and has expressly been approved of by the Federal Circuit"). Interest compensates the patent owner for the use of its money between the date of injury and the date of judgment. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996). In a patent case, "[g]enerally, the interest rate should be fixed as of the date of infringement, with interest then being awarded from that date to the date [the judgment is actually paid.]" *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, No. 8:10CV187, 2016 WL 6246590, at *2 (D. Neb. May 11, 2016).

An award of prejudgment interest at the T-bill rate of 28 U.S.C. § 1961 has been held to adequately compensate a patentee. *Datascope Corp.*, 879 F.2d at 829; *see also Cornell Univ. v. Hewlett–Packard Co.*, No. 01–cv–1974, 2009 WL 1405208, at *3 (N.D.N.Y. May 15, 2009) (Rader, Fed. Cir. C.J.) ("[T]he T-bill rate has been accepted and employed by many courts in patent cases as a reasonable method of placing a patent owner in a position equivalent to where it would have been had there been no infringement"); *Enzo Biochem, Inc. v. Applera Corp.*, No. 3:04cv929 (JBA), 2014 WL 29126, at *2 (D. Conn. Jan. 3, 2014) (limiting prejudgment interest to the Treasury rate to ensure that the plaintiff did not receive "excessive compensation," noting that the plaintiff should not be "financially rewarded" for its delay); *Century Wrecker Corp. v. E.R. Buske Mfg. Co.*, 913 F. Supp. 1256, 1283 (N.D. Iowa 1996) (applying the Treasury rate rather than the prime or corporate borrowing rate as reflective of the six-year delay in filing suit). Prejudgment interest is awarded for compensatory and not punitive purposes. *Oiness*, 88 F.3d at 1033. Thus, "the merits of the infringer's challenges to the patent are immaterial in determining the amount of prejudgment interest." *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).

Post judgment interest should accrue at the statutory rate as specified in 28 U.S.C. § 1961(a). *Amgen Inc. v. Hospira, Inc.*, 336 F.Supp.3d 333, at 364 (D.Del. 2018). Section 1961(a) provides, "Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment . . . ." 28 U.S.C. § 1961(a). Section 1961(a) does not provide for interest until a money judgment fixing the amount owed to the prevailing party. *Eaves v. Cty. of Cape May*, 239 F.3d 527, 534 (3d Cir. 2001). "The statute does not, by its terms, mandate that the judgment from which interest is calculated must be a final judgment." *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1177-78 (3d Cir. 1993); *see also Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 216 (3d Cir. 2004) ("The fact that the December 13, 2001, judgment was not a final order for purposes of appeal would not otherwise prevent postjudgment interest from running under § 1961 . . . .").

## D. Delaware Deceptive Trade Practices Act ("DTPA")

The DTPA prohibits "disparage[ment] of the goods, services or business of another by false or misleading representations of fact," committed "in the course of a business, vocation, or occupation or that generally "creates a likelihood of confusion or of misunderstanding." 6 Del. C. §§ 2532(a)(8) & (a)(12). "The DTPA has a lower burden of proof than the Lanham Act since 'a complainant need not prove competition between the parties or actual confusion or misunderstanding' to prevail in an action under the DTPA, 6 Del. C. § 2532(b)." *Keurig, Inc. v. Strum Foods, Inc.*, 769 F. Supp. 2d 699, 712 (D. Del. 2011). The Act is intended to address unfair or deceptive trade practices that interfere with the promotion and conduct of another's business. *Wright v. Portfolio Recovery Affiliates*, No. CIV.A. 09-612-GMS, 2011 WL 1226115, at *5 (D. Del. Mar. 30, 2011). The elements of a false advertising claim under the Lanham Act are: 1) that the defendant has

made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. *CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 131 (3d Cir. 2015).

E.      Enhanced Damages

"[A]n award of enhanced damages requires a showing of willful infringement." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc) (emphasis added); *accord i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 858 (Fed. Cir. 2010). "Awards of enhanced damages" are reserved for "egregious infringement behavior" the [Supreme] Court has "variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, — U.S. —, —, 136 S. Ct. 1923, 1932 (2016). In other words, reprehensible conduct undertaken with knowledge of its wrongfulness. *See id.* at 1930-32. Willfulness "is a classical jury question of intent. When trial is had to a jury, the issue should be decided by the jury." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).

F.      Attorney Fees, Nontaxable Expenses and Costs

Section 285 provides, in its entirety, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "When deciding whether to award attorney fees under § 285, a district court engages in a two-step inquiry." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012). The court first determines whether the case is exceptional and, if so, whether an award of attorney fees

is justified. *Id.* at 915-16. The Supreme Court defines "an 'exceptional' case [as] simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). An "exceptional" case is "'uncommon,' 'rare,' or 'not ordinary[.]'" *Id.* at 553. District courts may "consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

III.   DISCUSSION

A.   Minerva's Motions

1.   Renewed Motion for JMOL or, Alternatively, a New Trial (D.I. 521)

The Court finds Minerva's motion for JMOL should be denied. The Court finds the evidence at trial supports the jury's determination of damages. Hologic's damages expert, Mr. Christopher Barry presented substantial evidence of NovaSure sales. Since the parties stipulated that the NovaSure system embodies the asserted claims, NovaSure system sales alone established "demand for the patented product" under the first *Panduit* factor. Hologic need not show that the Minerva and NovaSure systems are identical. The jury was instructed that the treatments must be "sufficiently similar" to be viable alternatives in the same market (D.I. 496, Revised Initial Jury Instructions, Instruction No. 18). The jury was also instructed that "the amount of sales that Hologic lost may be shown by proving its share of the relevant market." *Id.* The record shows that Hologic's damages expert testified that he considered "alternative treatments"— such as birth control pills,

IUDs, and hysterectomy—for his market share analysis but concluded those other treatments had different characteristics, belonged to a different market segment, and should not be included in the market share allocation (D.I. 509, Trial Transcript (T. Tr.) at 1053-60). Mr. Berry's analysis conformed to Federal Circuit precedent. The experts identified the pertinent market for analyzing a market share allocation was global endometrial ablation ("GEA") devices because hysterectomy, IUDs, and birth control pills are not sufficiently similar to GEA devices (D.I. 509, T. Tr. at 1056-57). The Court finds Hologic properly identified the market. Minerva's arguments against Mr. Barry's market share allocation merely goes to the weight of the evidence, which is a determination left to the jury.

The Court finds Minerva's argument that the jury failed to apportion the damages to reflect the infringing features of the product is unavailing. The jury was instructed "where there are multiple components in the accused product, patent royalty damages must only reflect the value attributable to the infringing features of the accused product, here Minerva's EAS." D.I. 496, Revised Initial Instructions, Instruction No. 21A. The Court presumes the jury followed that instruction.

There is evidence in the record that supports the jury's calculation. The jury apparently credited some testimony from both experts, which it was entitled to do. It was ultimately up to the jury, however, to weigh the credibility of the parties' opposing theories and evidence. The Court declines to overturn a jury's determination as to the amount of a damages award when, as in this case, that verdict was supported by substantial evidence.

The Court finds Minerva's alternative motion for a new trial on reasonable royalties should also be denied. There is evidence in the record that supports the jury's royalty

award.  To the extent Minerva argues that the verdict form is internally inconsistent, that issue should have been raised at trial.  Moreover, the Court finds the verdict form is not inconsistent.  The award falls within the range of royalties the parties argued at trial.  Because the verdict form did not ask the jury to specify its methodology or calculations, the Court cannot divine the method the jury used.  Let it suffice to say that there are several ways it could legitimately arrived at the figure.  The jury apparently credited Hologic's evidence as to comparable licenses and found that Minerva had not rebutted it.  Evidence of gross profit premium also supported the jury's verdict.

2.     Motion for a New Trial for Lanham Act and Breach of Contract Claims (D.I. 523)

The Court finds Minerva's motion for a new trial on its counterclaims should be denied.  Though Minerva contends FDA correspondence that was allegedly withheld in discovery definitively demonstrates that Hologic's advertising for NovaSure was improper, the Court stands by its determination that the FDA correspondence was not relevant to Minerva's Lanham Act claims.  Further, the Court stands by its other evidentiary rulings.  The Court found there was sufficient evidence on the Lanham Act and breach of contract claims to get the claims to the jury and the jury decided against Minerva.  The Court will not disturb the jury's determination.

3.     Motion for an Injunction (D.I. 525)

The Court finds an injunction under the DTPA would be inappropriate in light of the jury's finding that there was no false advertising under the Lanham Act.  The elements of claims for relief under the federal and state laws are sufficiently similar that the Court finds the jury's verdict is conclusive as to the state law claim as well as the federal claim.  The same conduct is involved in both claims.  Further, the Court finds, even if Minerva's DTPA

claim had not been resolved by the jury, Minerva has not shown the irreparable harm necessary to justify injunctive relief. There is insufficient evidence of a systematic problem that would warrant an injunction in any event. The evidence at trial established that the alleged wrongful conduct was not pervasive.

B.    Hologic's Motions

1.    Motion for Attorney Fees and Related Nontaxable Costs (D.I. 528)

The Court finds that this is not a case so exceptional as to justify an award of such fees and expenses under 35 U.S.C. § 285. Although this patent case was hotly contested and involved numerous disputes between the parties, the record does not show that the either party adopted unreasonable or frivolous litigation positions, litigated in an unreasonable manner, or acted in bad faith. Such zealous representation is the rule, not the exception, in most patent cases.

2.    Hologic's Motion for Enhanced Damages (D.I. 530)

The Court finds Hologic's motion for enhanced damages for infringement of the '183 patent is moot in view of the Federal Circuit finding of invalidity. With respect to the '348 patent, the Court finds the damages are adequate to compensate Hologic for infringement through the life of the patent.

3.    Hologic's Motion for a Permanent Injunction (D.I. 532)

This motion relates only to the '183 patent and is moot.

4.    Hologic's Motion for an Accounting, Supplemental Damages, Ongoing Royalties, Prejudgment Interest, and Postjudgment Interest (D.I. 534)

Hologic seeks calculation of supplemental damages from April 1, 2018 to the August 13, 2018, date of judgment. It argues that the 16.1% "effective rate," which

combines both the lost profits and the reasonable royalty awarded by the jury, should be used to calculate the supplemental damages. Minerva contends that rate is not supported by the evidence and argues that supplemental damages cannot be calculated. It argues that lost profits and reasonable royalty are two distinct damages theories and are calculated and proven in different ways.

Because the Court rejects Minerva's contention that the jury's verdict is not supported by the evidence, its argument that the jury's determination is wholly speculative is unavailing. The parties apparently agree that the jury determined the reasonable royalty rate was 8% for infringing products sold but not part of Hologic's lost profits. The jury declined to accept Minerva's contention that damages should be limited to only a reasonable royalty rate and not lost profits (D.I. 498, Jury Verdict at 1, § I.1.b). Hologic's damages expert testified that 78.6% of the products sold by Minerva represent Hologic's lost sales. Without evidence to the contrary, it is only reasonable to assume the same proportion of lost sales continued through the life of the '348 patent. The Court finds Hologic's proposal of 16.1% as a combined lost profit and reasonable royalty rate is reasonable. Accordingly, the Court finds Hologic is entitled to recover a reasonable running royalty from the last-produced date of sales (April 1, 2018) to the date the '348 patent expired (November 19, 2018). The record contains some evidence of Minerva's sales to the date of judgment, but not to the date of the expiration of the '348 patent. The Court finds Hologic is entitled to recover a 16.1% royalty for infringing sales that are not reflected in the jury verdict and the Court will order an accounting of such sales. The Court finds, however, that no enhanced royalty for infringing sales post-verdict should be awarded. Hologic has not shown that enhanced damages are warranted.

With respect to prejudgment interest, Hologic seeks prejudgment interest in the amount of $270,533, which represents interest calculated at the prime rate compounded quarterly from the date of infringement through the date of judgment. Minerva concedes Hologic is entitled to recover prejudgment interest but argues the Treasury bill ("T-bill") rate will provide adequate compensation to Hologic. The Court agrees with Hologic and finds prejudgment interest at the prime rate, compounded quarterly, from and after August of 2015 to the date of judgment is appropriate (D.I. 536, Declaration of Christopher C. Barry at 8-10; Schedule D). Accordingly, Hologic will be awarded $270,533 in prejudgment interest. There is no dispute that Hologic is also entitled to postjudgment interest and Hologic will also be awarded postjudgment at the legal rate from and after August 13, 2018. Accordingly,

IT IS ORDERED:

1.      Defendant's renewed motion for judgment as a matter of law (D.I. 521) is denied.

2.      Defendant's motion for a new trial (D.I. 523) is denied.

3.      Defendant's motion for an injunction under the Deceptive Trade Practices Act (D.I. 525) is denied.

4.      Plaintiffs' motion for attorney fees (D.I. 528) is denied.

5.      Plaintiffs' motion for enhanced damages (D.I. 530) is denied.

6.      Plaintiffs' motion (D.I. 532) for a permanent injunction and accounting is denied as moot.

7.      Plaintiffs' motion for an accounting, supplemental damages, ongoing royalties, prejudgment interest, and postjudgment interest (D.I. 534) is granted in part and denied in part as set forth in this order.

8.    Defendant shall submit an accounting of infringing sales from April 1, 2018, to November 19, 2018, within two weeks of the date of this order.

9.    The parties shall each submit a proposed final judgment to the Court within three weeks of the date of this order, in conformity with this Memorandum and Order.

10.    A final judgment in accordance with this Memorandum and Order will thereafter issue.

Dated this 1st day of May 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge